In the Matter of the Application of the Taxpayers and Freeholders of the Village of Plattsburgh for a Summary Investigation into the Financial Affairs of the Village of Plattsburgh.

Alfred Guibord and Others, Appellants; L. W. Bromley and Others, Taxpayers of the Village of Plattsburgh, Respondents.

1. Appeal — Order on Investigation into Financial Affairs of Village. An order made by a justice of the Supreme Court, and affirmed by the Appellate Division, determining, as a result of the investigation, a summary investigation into the financial affairs of a village, instituted by taxpayers and freeholders, under the General Municipal Law (L. 1892, ch. 685, § 3), is reviewable by the Court of Appeals, as a final order in a special proceeding.

2. Village Charter — Payments by Trustees in Excess of Sum Raised during Year. A provision in a village charter, that the trustees may raise in each year a specified sum for the purpose of constructing sewers, does not prohibit, or render illegal, payments by the trustees in excess of that sum during any one year, with money belonging to the sewer fund, for sewers actually constructed in previous years.

3. Excess and Deficiency in Village Funds. A provision in the charter of a village which has other sources of revenue besides taxes, that whenever there shall be an excess of money in any particular fund in any one year raised by tax, the trustees may apply such excess to supply any deficiency that may exist in any other fund, refers not to a deficiency caused by non-payment of taxes but to a deficiency arising from the reasonable wants and necessities of the village and the expenditure of a particular fund.

4. Public Health Law — Municipal Charters Affected by. The provision of the Public Health Law (L. 1893, ch. 661, § 30), that all expenses incurred by any local board of health in the performance of the

duties imposed by law shall be a charge upon the municipality, to be audited, levied, collected and paid in the same manner as other municipal charges, must be regarded as in the nature of an amendment, or at least a part, of all municipal charters.

5. LOCAL HEALTH BOARD— EXPENSE OF GUARDING AGAINST CONTAGIOUS DISEASE.   When a local board of health incurs expense in the performance of the duty imposed by the Public Health Law (§ 24), in guarding against the introduction of contagious or infectious diseases, or in the isolation of infected persons or things, or in providing suitable places for the care of the sick who cannot otherwise be provided for, it becomes the duty of the municipal authorities to comply with the order of the board of health in that regard, whether there is any provision to that effect in the charter or not.

6. METHOD OF PROCEDURE REQUIRED BY CHARTER.   The Public Health Law does not abrogate methods of procedure required by municipal charters, such as, for instance, a requirement that no sewer exceeding twenty rods in length shall be constructed without advertising.

7. EXPERT INVESTIGATOR OF VILLAGE FINANCES.   In a summary proceeding, under the statute, for the investigation of the financial affairs of a village, it is not proper to appoint one of the complainants as an expert to make the investigation, at least without the consent of all parties.

8. COSTS OF INVESTIGATION.   The costs of such an investigation proceeding, if any are awarded, must be restricted, by force of section 3240 of the Code of Civil Procedure, to those allowed for similar services in an action.

9. TIMELY OBJECTION TO COSTS.   When the first opportunity to object to the costs of such an investigation, or to raise any question as to the amount, is afforded by the service or publication of the final order awarding costs, a party who then objects by appeal cannot be held guilty of *laches* or be considered to have waived the right to question the allowance of costs.

*Matter of Taxpayers of Plattsburgh*, 27 App. Div. 353, reversed.

(Argued October 3, 1898; decided October 25, 1898.)

APPEAL by Alfred Guibord and others from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 28, 1898, affirming an order made by a justice of the Supreme Court declaring certain acts of the appellants as officers of the village of Plattsburgh illegal, restraining the payment of certain claims against the village and imposing upon such officers the costs of the proceeding.

The facts, so far as material, are stated in the opinion.

*S. L. Wheeler* for appellants.  The appellants are interested in, and affected by, the proceeding and the order made, so as to entitle them to review the determination.  (Code Civ. Pro. § 1294; *Chase* v. *Chase,* 96 N. Y. 373, 379; *People ex rel.* v. *Carter,* 119 N. Y. 557; *Moore* v. *City of Albany,* 98 N. Y. 396–410; *Chamberlain* v. *Taylor,* 105 N. Y. 185, 196; *People ex rel.* v. *Jones,* 110 N. Y. 509; *People ex rel.* v. *Sackett,* 15 App. Div. 293; *People ex rel.* v. *Town,* 1 App. Div. 127–130; *People ex rel.* v. *Campbell,* 152 N. Y. 51; *People ex rel.* v. *Gilmore,* 88 N. Y. 626.)  The justice below erroneously finds that whatever was paid out over the amount permitted to be raised by the charter was an illegal payment.  (L. 1890, ch. 322, tit. 7, §§ 1, 9.)  The justice below is in error in his conclusion that the amount raised by the village by tax in any one year cannot lawfully be applied to the payment of a debt lawfully and properly incurred in a previous year.  (L. 1890, ch. 322, tit. 7, § 3.)  The judge below reached an erroneous conclusion when he decided that the board of trustees had illegally audited the bill of the board of health for bills prior to 1896, and the bill of the same board for $1,600 for the year 1896.  (L. 1893, ch. 661; 1 R. S. [9th ed.] 798, 803, §§ 24, 30; *Rae* v. *City of Flint,* 16 N. W. Rep. 887.)  The costs incurred by the taxpayers on the investigation were erroneously taxed, without notice and in a lump, and the appellants were ordered to pay such costs, and execution was awarded therefor against them severally.  (1 R. S. 581, § 3; *People ex rel.* v. *Comrs.,* 5 Abb. [N. C.] 144; *Matter of City of Brooklyn,* 148 N. Y. 107; *Matter of R. & S. R. R. Co.,* 55 N. Y. 145; *Matter of P. E. Pub. School,* 86 N. Y. 396; Code Civ. Pro. § 2140, subd. 3; *Lossee* v. *Ellis,* 13 Hun, 655–657.)  With respect to the appellant Alfred Guibord, the proceedings were wholly irregular, and the imposition of costs without the slightest warrant in law, and as to him the order, in whole and in detail, should be reversed.  (Charter, L. 1890, ch. 322, tit. 3, § 4; tit. 4, § 2; tit. 5, § 1; *People ex rel.* v. *Brush,* 64 N. Y. S. R. 139; 146 N. Y. 60; Code Civ. Pro. § 190, subd. 1; *People* v. *Am. L. & T. Co,* 150 N. Y. 117,

120; *Peri* v. *N. Y. C. & H. R. R. R. Co.*, 152 N. Y. 521, 526.)

*Royal Corbin* for respondent. The Appellate Division unanimously sustained the findings of fact sought to be reviewed, and the Court of Appeals will not review such proceedings in a special proceeding. (152 N. Y. 417.) The proceeding was analagous to an action. There were issues, witnesses, testimony and determination, and yet no exceptions were taken either to findings of fact or findings of law. The appeal presents nothing in particular, but seeks to review the whole case as if in a trial court. The General Rules of Practice apply. (Code Civ. Pro. § 1361.) The act is a remedial statute, and should be liberally construed to effect its intent. (53 Hun, 181.) The third order was proper. It forbade payment of claims of 1896 out of moneys raised for 1897. (L. 1890, ch. 322, tit. 7, § 3; 119 N. Y. 290.) The orders were within the discretionary power of the justice below. (155 N. Y. 623.) The order fixing costs and directing payment was proper. (*Stanton* v. *Town of Taylor*, 19 N. Y. Supp. 43; 14 Civ. Pro. Rep. 399; 110 N. Y. 667; 97 N. Y. 610; 94 N. Y. 655; 41 N. Y. 362.) The appellant Guibord claims he should not be charged with any costs. He was made a party to the proceeding. He did not appear. In the Appellate Division he claimed he was not present or represented below. Being in default he has no right to appeal. He cannot pass by the court below and make the appellate court the court of original jurisdiction. (20 Johns. 282; 151 N. Y. 511; L. 1890, ch. 322, tit. 4, § 1; tit. 5, §§ 1, 3.) The notices of appeal do not distinctly specify any intermediate orders to be reviewed. (Code Civ. Pro. § 1301.)

O'BRIEN, J. This was a summary proceeding instituted before one of the justices of the Supreme Court under section 3 of the General Municipal Law (L. 1892, ch. 685), which provides as follows: "If twenty-five freeholders in any town or village shall present to a justice of the Supreme Court of

the judicial district in which such town or village is situated, an affidavit, stating that they are freeholders and have paid taxes on real property within such town or village within one year, that they have reason to believe that the moneys of such town or village are being unlawfully or corruptly expended, and the grounds of their belief, such justice, upon ten days' notice to the supervisor, and the officers of the town disbursing the funds to which such moneys belong, or the trustees and treasurer of the village, shall make a summary investigation into the financial affairs of such town or village, and the accounts of such officers, and, in his discretion, may appoint experts to make such investigation, and may cause the result thereof to be published in such manner as he may deem proper.

" The costs incurred in such investigation shall be taxed by the justice, and paid, upon his order, by the officers whose expenditures are investigated, if the facts in such affidavit be substantially proved, and otherwise by the freeholders making such affidavit. If such justice shall be satisfied that any of the moneys of such town or village are being unlawfully or corruptly expended, or are being appropriated for purposes to which they are not properly applicable, or are improvidently squandered or wasted, he shall forthwith grant an order restraining such unlawful or corrupt expenditure, or such other improper use of such moneys."

On the 24th of February, 1897, twenty-five freeholders and taxpayers of the village made and presented to the justice an affidavit charging in substance that they had reason to believe that the moneys of the village were being unlawfully expended. It was not charged that they were corruptly expended or improvidently squandered or wasted. The charges were wholly based upon the ground of illegal action, in that the trustees had incurred expenses beyond the amount which they were authorized to raise by taxation, and had incurred debts beyond the limitations of the village charter.

Upon this affidavit and notice, served therewith, the justice appointed the 10th day of March, 1897, for a hearing. The

hearing was had at considerable length, and at its conclusion the justice made a report in the form of an order, in which he found that certain payments of money made by the trustees were illegal and contrary to the limitations of the charter, and that certain debts and obligations had been created and audited which were illegal. He also made an order restraining the village treasurer from paying any of the debts so illegally created, or any of the costs of the proceedings.

The investigation related wholly to past transactions; that is, to expenditures that had been made during the three years previous to the institution of the proceedings. It was not claimed that the trustees were, at the time of the institution of the proceedings, actually engaged in squandering or misappropriating the moneys of the village, or that they contemplated any such action in the future. Inasmuch as the order of the learned judge convicted the trustees of illegal payments of moneys for the restoration of which they were personally liable, and of contracting debts which, if not binding upon the village, were upon themselves personally, and since the treasurer of the village was restrained from paying the claims of certain of its creditors who had no hearing as to the validity of the claims or any opportunity to be heard, the decision may, in the future, prove to be of considerable practical importance to the parties in interest.

The first question to be considered is, whether the order of the learned justice, which has been affirmed at the Appellate Division, is reviewable in this court. I think it is. It was a special proceeding authorized by statute, and although it authorized the judge to proceed summarily, it must be classed as a special proceeding, and the order, which was the result of the investigation, must, therefore, be classed as a final order in a special proceeding and, hence, reviewable here. For the reasons already stated, if it appears that the order is the result of the application of erroneous principles or rules of law with respect to the duties and obligations of the trustees and village officers in the administration of their trust, or an erroneous construction of the charter, it should not be permitted to

stand. In the body of the order itself the reasoning and legal conclusions of the learned judge are found. In fact, the order itself assumes the form of an elaborate opinion by the learned judge with respect to the law and the facts involved in the investigation, and on a careful examination of the grounds and reasoning upon which he proceeded and which are involved in the order, I think he applied rules and principles to the questions before him altogether too strict and in some respects erroneous in point of law.

Without further reference to the facts it will be quite sufficient to state briefly the points disclosed by the order in which there is, as we think, legal error.

I. One of the fundamental rules laid down by the learned judge and upon which the order largely rests is the proposition that the trustees acted illegally in paying out from the proper village fund, debts chargeable to that fund but contracted during previous years. For instance, the charter provides that the trustees may raise by taxation in each year a sum not to exceed $3,000 for the purpose of constructing necessary sewers. The order under review shows that during the year 1896 the trustees paid out more than that sum, but the excess was for sewers actually constructed during that and previous years, which had not yet been paid for. I do not think this can be said to be an illegal payment. It may happen in a perfectly honest and prudent administration of village affairs that the trustees may be required by the local board of health to construct in some one year sewers costing $6,000, whereas they have raised only $3,000 to pay for them; but if in the next year they should conclude not to construct any sewers at all, they would have in the treasury $3,000 applicable to the payment of the expense of constructing sewers. I have no doubt that they may legally pay out this money for the balance due and unpaid on sewers constructed in previous years, and what is true with regard to sewers or the sewer fund, is equally true of many of the other funds referred to in the order. There is no prohibition in the charter against paying an honest debt incurred during previ-

ous years, from the proper fund when there is money in the treasury, although the debt was not contracted during the year when the payment was made.

II. It is provided by the charter that whenever there shall be an excess of money in any particular fund in any one year raised by tax, the trustees have power to apply such excess to supply any deficiency that may exist in any other fund. The learned judge in his report limits the application of this provision to cases where there is a deficiency in some particular fund in consequence of non-payment of taxes or otherwise, and he holds it has no application when the amount of the particular fund has been raised by taxation and paid into the treasury. His position is that then there can be no deficiency.

We think that is altogether too narrow a construction of the statute. The village has other sources of revenue besides taxes. It seems there is paid into the treasury each year considerable sums of money for fines, licenses and other privileges for which the village is entitled to charge. The deficiency referred to in the statute is not a deficiency caused by non-payment of taxes, but one arising from the reasonable wants and necessities of the village and the expenditure of a particular fund. That is to say, if the trustees should be of the opinion that instead of spending $3,000 for sewers, they should spend $4,000, and there is an excess over and above the necessities of the current year in the general fund or any other fund, of that amount, arising from these miscellaneous sources, it is, we think, perfectly competent for the trustees to use that excess to construct sewers or for any other purpose that in their judgment and discretion is for the best interests of the village.

III. The debts created and audited, and which the learned judge found had been illegally created, or a large part of them, were due to the action of the trustees of the village, in prior years, although the board under investigation had audited the claims and presumptively were willing to pay them. These debts amounted in the aggregate to something over $11,000. About one-half of this debt was due to the prevalence of an

epidemic in the village, which the local board of health undertook to suppress. The health board directed the trustees to quarantine certain places and persons supposed to be infected and dangerous to the community, and they, or the board itself, undertook to do it and thus contracted the debts, claims or obligations already mentioned, and which they subsequently audited. I do not think the auditing of these claims constitutes illegal action on the part of the trustees.

The General Public Health Law (L. 1893, ch. 661) provides as follows :

"Every such local board of health shall guard against the introduction of contagious and infectious diseases by the exercise of proper and vigilant medical inspection and control of all persons and things arriving in the municipality from infected places, or which from any cause are liable to communicate contagion. It shall require the isolation of all persons and things infected with or exposed to such diseases, and provide suitable places for the treatment and care of sick persons who cannot otherwise be provided for. * * *" (§ 24.)

"All expenses incurred by any local board of health in the performance of the duties imposed upon it or its members by law, shall be a charge upon the municipality, and shall be audited, levied, collected and paid in the same manner as the other charges of, or upon, the municipality are audited, levied, collected and paid." (§ 30.)

This provision of the general law must be regarded as in the nature of an amendment or at least a part of all municipal charters. The charter of this village, it is true, contains no provision authorizing the trustees to raise money or to contract debts for the purpose of suppressing disease or preserving the public health, but the general laws of the state make it their duty to comply with the orders of the local board of health in this respect, and when that board incurs expense in the performance of its duty in guarding against the introduction into the village of contagious or infectious diseases, or in the isolation of persons or things infected with or exposed to such diseases, or in providing suitable places for the treatment and

care of the sick who cannot otherwise be provided for, it becomes the duty of the municipal authorities to comply with the order whether there is any provision to that effect in the charter or not. So we think the strict view taken by the courts below with reference to the powers of the trustees in this respect is erroneous.

IV. There are some other provisions of the charter under which acts of the trustees condemned by the report can be justified only by a very liberal construction of the law with respect to the powers of village officers acting in an emergency for the public good ; for instance, the charter requires that no sewer exceeding twenty rods in length shall be constructed without advertising. It seems that the trustees of this village did construct sewers of a greater length, without the necessary advertisement, and while it is not claimed that there was any fraud or corruption in these transactions, and it is not claimed that the village has not had the benefit of every dollar spent in that regard, yet in this respect the trustees probably exceeded their powers. It is true a part of them were constructed under the direction of the local board of health as a preventative of an epidemic then existing in the village or apprehended. It was an emergency, no doubt, that called for prompt and vigorous action, but all that could be had by compliance with the charter, and if the trustees under these circumstances did construct sewers longer than specified in the charter, it was at least a technical disregard of the law. They could have held the orders of the board of health in abeyance until the expiration of the time provided by the charter for advertising. The General Health Law of the state is an exercise by the legislature of the police power, but it does not abrogate methods of procedure required by municipal charters, and when the trustees of this village constructed the sewers in question under its direction, without reference to the limitations of the charter, it is no doubt true that their action in this respect was illegal, but this consideration could hardly justify the order made in this case.

In regard to the procedure adopted at the investigation,

there are two things disclosed by the record of which I think the trustees have the right to complain :

*First.* It will be seen by the statute above quoted that the justice making the investigation had the right to appoint an expert for the purpose of making the investigation into the financial affairs of the village, and he exercised that power; but the expert appointed was one of the complaining freeholders and taxpayers, and his appointment was without the consent of the trustees and upon the justice's own motion. The court had the right to give to his report the same force and effect that is given to the report of a referee appointed to report testimony or facts with his opinion thereon. It was not conclusive, but was merely for the information of the conscience of the court. When it was offered in evidence it was objected to by counsel for the trustees on these specific grounds. It appears in the record as part of the proceedings, and hence must have been accepted by the justice for the purpose contemplated by the statute. In this way the unverified statement of one of the parties to the proceeding, who was interested, was received and acted upon by the court, and hence it may be said that in some sense the action of the trustees was investigated by one of their accusers. If the general principles applicable to jurors, judges and referees are applicable to such a case and to the expert appointed, and we see no reason why they should not be applied, then he was not eligible for the appointment.

It may be that this error, if it was one, had no influence upon the result; but it is proper to say that an expert, whose duty it is to investigate books and papers of a village government and to report the result to the court, is, in a very substantial sense, a referee and should not have been selected, at least without the consent of all the parties, from one of the complainants, whether there was power to appoint him or not.

*Second.* The justice awarded costs against the trustees in the sum of $778.75, and directed payment of this sum by them personally. If these costs were awarded upon any erroneous principle or view of the law, the trustees have the

right to complain.   The statute gave to the justice the power to award and tax costs, but no provision is made with respect to the principle upon which costs are to be awarded or the rate by which they are to be measured.   Since this was a special proceeding, costs are governed by the provisions of the statute in that regard.   It was not within the power of the justice to direct the trustees to pay costs in a lump sum, or in such amount as he should determine would be a proper allowance for the counsel fees and expenses of the complainants, as he evidently did.   The costs in special proceedings are limited by statute the same as the costs in actions, and the justice had no power in this case to award costs in excess of these limitations.   Under section 3240 of the Code the costs, if any, should have been restricted to those allowed for similar services in an action.

The first opportunity the appellants had to object to the costs, or raise any questions as to the amount, was when the order was served upon them or published, and they then made objection by appeal.   They have not, therefore, waived their right to question the allowance in this court.   If, before the order was entered, they had notice of a bill which was presented to the justice for taxation, and an opportunity to be heard before him, and failed to appear, the contention of the learned counsel for the taxpayers might be held to be correct. But a party cannot be held guilty of *laches* or considered to have waived any right when he makes objection at the first possible opportunity.

For these reasons the order of the justice and of the Appellate Division should be reversed, without costs to either party.

All concur (BARTLETT and MARTIN, JJ., in result), except VANN, J., not voting.

Order reversed. etc.