In the Matter of the Investigation of the Financial Affairs of THE TOWN OF HEMPSTEAD.

GEORGE W. SMITH and Others, Town Officers, Appellants; JOHN LYON and Others, Freeholders, Respondents.

*Town of Hempstead — judicial investigation of its affairs — it is a special proceeding — costs thereof, against whom allowable — scope of the investigation — no percentage allowed to a supervisor — allowance to a town clerk for attendance upon meetings — order in such proceeding not evidence in an action for money received — fees of a justice of the peace — none for services upon a legislative committee — requiring a dog to be killed — fees of constables and deputy sheriffs — mileage fees in conducting prisoners — duty of an auditing board where illegal cannot be separated from legal charges.*

Section 3 of the Municipal Law (Chap. 685 of the Laws of 1892), providing for the judicial investigation of the financial affairs of a town or village, is a remedial statute and is designed: *First,* to prevent the present or future illegal appropriation of the public moneys; and, *second,* to determine the financial condition of the town and prevent future illegal appropriations of public moneys by pointing out what proper and what improper charges may have been allowed by former town boards. Thus, while the proceeding must be based upon present acts which contemplate the unlawful expenditure of money already on

hand, or which may thereafter be produced from the sources of revenue of the town, the experts in their investigation are not limited to the particular year in which the illegal appropriation sought to be restrained is made.

The proceeding is a special proceeding and, under the provisions of section 3240 of the Code of Civil Procedure, the costs are to be awarded in the discretion of the court at the rates allowed for similar services in an action brought in the same court; in the absence of a stipulation, stenographer's fees cannot be taxed as costs in such proceeding; but the fees of the experts employed therein are to be treated as similar to those of a referee and are, therefore, properly taxable.

The costs of such an investigation cannot be taxed against the officers of the town, who were not made parties to the proceeding, although their bills may have been found to be irregular.

While the statute cannot operate in restraint of illegal payments made by former boards of supervisors, the fact that the final order made in such a proceeding assumes to restrain such payments, does not furnish any basis of legal error, such a provision being entirely ineffective.

A supervisor of a town has no authority to retain a percentage of the public moneys passing through his hands as compensation for receiving and disbursing such moneys, and a resolution of the board of supervisors authorizing such action by one of their number is void.

A town clerk is not entitled to a *per diem* allowance of two dollars for his services as custodian of the town records.

Under section 3 of chapter 344 of the Laws of 1893, entitling the town clerk, when required to attend upon a town board, to the same compensation as any other member of the town board, such clerk is, in the event of the town board acting through different members at several meetings on the same day, entitled to a *per diem* compensation for each such meeting; but in cases where the board is composed of the same individuals performing services for the town, although under different names, he can have but one *per diem* compensation.

*Semble*, that the report and order in such a proceeding would not be admissible in evidence upon the trial of an action for moneys had and received, brought by the town against the officer to whom illegal charges had been paid.

Chapter 188 of the Laws of 1884, fixing the fees of justices of the peace in civil and criminal cases and providing a compensation "for each order in writing," contemplates a written order and not a mere entry in the minutes of the justice that he has made a determination or given a direction.

Under the provisions of that statute, authorizing the justice to charge one dollar for each day's necessary attendance upon the hearing or examination of an accused, the justice is entitled to charge one dollar for each day's necessary attendance whether evidence was taken or not; where the case is necessarily adjourned, he is entitled to charge the statutory fees for the second attendance.

A justice of the peace cannot be retained in his capacity as such; items for such retainer in a bill presented by him to the town are properly rejected, as are also items for blanks and books used in his office, the fees of the office being supposed to cover such expenses.

The services of a justice of the peace upon a legislative committee concerning legislation affecting the town, and the expenses connected therewith are not a proper town charge.

A proceeding instituted before a justice of the peace for an order requiring a dog to be killed, whether instituted under section 125 of the County Law (Chap. 686, Laws of 1892) or under sections 1 and 2 of article 9 of the ordinances of the town of Hempstead, is in the nature of a criminal proceeding, and the magistrate is entitled to the same fees for the steps which he is required to take therein as in any other criminal proceedings.

Constables and deputy sheriffs are not entitled to a fee of fifty cents *per diem* for attending court when no jury is summoned, nor are they entitled to a fee for taking prisoners before a justice of the peace.

A town officer engaged in conducting several prisoners before a magistrate or to the place of custody is not entitled to charge full mileage fees for each prisoner so conducted.

Where bills against a town are presented in such a manner that the auditing board is unable to separate the illegal from the legal charges, it is its duty to refuse to audit any of the charges.

APPEAL by George W. Smith and others, the town officers in the above-entitled proceeding, from an order made by a justice of the Supreme Court and entered in the office of the clerk of the county of Queens on the 11th day of March, 1898, confirming the report of experts appointed by said justice to investigate the financial affairs of the town of Hempstead, pursuant to chapter 685 of the Laws of 1892; and also declaring certain acts of the appellants, as officers of the town of Hempstead, and of certain individual town officers, illegal, restraining the payment of certain claims against the town and imposing upon such officers and persons the costs of the proceedings.

*Henry A. Monfort* [*A. N. Weller* with him on the brief], for the appellants.

*Thomas Young*, for the respondents.

HATCH, J.:

The proceeding which furnishes the basis of this appeal was instituted by the affidavit of thirty-three freeholders of the town of Hempstead, which was presented to a justice of the Supreme Court and prayed for an investigation of the financial affairs of the town, the accounts of the officers and of each and all of the bills and

accounts audited and allowed by the officers of the town during the year 1896. The persons named as constituting the town board were George W. Smith, supervisor; James B. Curley, town clerk, and Francis B. Taylor, Eustace H. Wheeler and George W. Smith, three justices of the peace of said town; and the affidavit charged that, acting as such board of town audit, they did on the 21st day of December, 1896, audit and allow claims and accounts as charges against said town in the sum of $23,597.22, exclusive of charges for caring for the highways and poor of said town. The affidavit further averred that in many particulars the items of several of the accounts and charges thus allowed were illegal and did not constitute a valid charge against the town. The accounts claimed to be illegal and to have been unlawfully audited and allowed by the town board consist of charges made and accounts presented by the supervisor of the town, town clerk, justices of the peace, deputy sheriffs and constables of the town; also certain other persons for printing bills and other articles furnished the town, and for services rendered pursuant to the direction of the health officer of the town; also certain service rendered at Albany in connection with legislation affecting the town. This affidavit and notice of motion were served upon George W. Smith, the supervisor of the town; James B. Curley, the town clerk; James M. Seaman, George W. Smith, Francis B. Taylor and Eustace H. Wheeler, justices of the peace, and Tredwell Abrams, citizen member of the board of health of the town.

Thereupon an order was made by the justice appointing experts, under section 3 of the General Municipal Law, and directing that a hearing be had before them in the town hall in the village of Hempstead on the 8th day of February, 1897. Upon such hearing the experts proceeded to take proof and examine the bills and charges rendered to and audited by the town board of 1896, the members of which were made parties to the proceeding, and also to investigate in like manner the audits of former boards, the charges of town officers and other persons, extending as far back as 1882 and perhaps beyond. In several instances the experts found illegal charges audited by former town boards and improperly paid to the officers and individuals named in their report. In these cases report was made in detail as to the character of the charges, and the court has restrained payment in each instance. As to several of these

cases the persons who made the illegal charges, assuming them to be such, were not members of the town board of 1896, or officers of the town for that year, and were not made parties to the proceeding or mentioned in the affidavit; they were not served with any notice of the proceeding, and so far as they appeared in the proceeding it was in obedience to a subpœna and for the purpose of giving testimony.

We are, therefore, to consider, in the first instance, the purpose and scope of the act under which the proceeding is instituted, and determine, if we may, how far and upon whom it may be made to operate in the present proceeding. The clause applicable to the present case is found in section 3 of the act, and reads as follows:

" If twenty-five freeholders in any town or village shall present to a justice of the Supreme Court of the judicial district in which such town or village is situated, an affidavit, stating that they are freeholders and have paid taxes on real property within such town or village within one year, that they have reason to believe that the moneys of such town or village are being unlawfully or corruptly expended, and the grounds of their belief, such justice, upon ten days' notice to the supervisor, and the officers of the town disbursing the funds to which such moneys belong, or the trustees and treasurer of the village, shall make a summary investigation into the financial affairs of such town or village, and the accounts of such officers, and, in his discretion, may appoint experts to make such investigation, and may cause the result thereof to be published in such manner as he may deem proper.

" The costs incurred in such investigation shall be taxed by the justice, and paid, upon his order, by the officers whose expenditures are investigated, if the facts in such affidavit be substantially proved, and otherwise, by the freeholders making such affidavit. If such justice shall be satisfied that any of the moneys of such town or village are being unlawfully or corruptly expended, or are being appropriated for purposes to which they are not properly applicable, or are improvidently squandered or wasted, he shall forthwith grant an order restraining such unlawful or corrupt expenditure, or such other improper use of such moneys." (Laws of 1892, chap. 685, § 3.)

It seems clear, from the provisions of the act, that the basis of the

SECOND DEPARTMENT, JANUARY TERM, 1899. [Vol. 36.

proceeding must be founded upon a reasonable belief that the moneys of the town are being unlawfully or corruptly expended. This must relate to present acts which contemplate an unlawful expenditure of money already on hand, or which may thereafter be produced from the sources of revenue of the town. (*Matter of Town of Eastchester*, 53 Hun, 181.) The act which may be restrained is such act as will in its result deplete the treasury of the town either presently or at a future time. It is manifest, therefore, that it is not meant to be operative upon a former action which has been consummated by payment. Indeed, it would be an absurdity to afford the remedy of restraint upon an accomplished act. If, therefore, the only complaint which could be made rested in a prior appropriation and illegal payment of the public moneys, there would be no basis for any proceeding under the statute. But while this is true, it by no means follows that the experts, in their investigation of the financial affairs of the town, are limited to the particular year in which the illegal appropriation sought to be restrained is made. The purpose of the act not only is to restrain present acts, but also to investigate the financial affairs of the town. This authority, it is evident, contemplates an inquiry to the fullest extent. The authority to restrain is of necessity limited, but the fullest investigation of the financial affairs of the town may be quite necessary in order to determine whether a present act should be restrained. The present act of appropriation of money may rest upon the acts of former town officials, themselves illegal, and yet in form creating an apparent lien which the present officers are required to discharge. Under such circumstances it may be that the present act of the officers, so far as intent is concerned, is apparently necessary to the lawful discharge of a public obligation, and yet the act be itself illegal. Investigation of the prior acts may be necessary in order to determine the lawful or unlawful character of the present act. This is illustrated by the proceeding in *Matter of Taxpayers of Plattsburgh* (157 N. Y. 78).

It is also proper, in order that it may appear what has been the practice and custom of the town in auditing town charges, and in order to determine the existing financial condition, to investigate the course of procedure in respect of the expenditure of public moneys, so that waste may be prevented, if there has been waste,

and to the end that improper methods in expenditure may be prevented by pointing out wherein illegal acts have been done, if any such there be, and that a custom may not be established for the allowance of improper charges, where such charges are not sanctioned by law.   The statute is remedial, evidently seeking two ends : *First,* to prevent a present or future illegal appropriation of the public moneys; and, *second,* to determine the financial condition of the town, and provide by report and determination what are proper and what improper charges which may have been allowed by former town boards.   In this way present illegal acts may be restrained, and future illegal acts in the appropriation of public moneys may be prevented, by having clearly pointed out what are and what are not proper charges.   The present investigation, in some of its results, makes apt illustration of the remedial features of the act, quite independent of any restraint which is authorized by its provisions.   It appears in the testimony, and from the report of the experts, that Martin V. Wood, who was a supervisor of the town from 1882 to 1889, inclusive, and for the years 1894 and 1895, retained as percentages during these years $8,123.57.   It is quite evident that the percentages thus retained by such supervisor were illegally retained.   We are cited to no provision of law, except as is hereafter noted, which authorized the supervisor of the town to retain a percentage of the moneys passing through his hands.   The statute fixes the *per diem* compensation to which a supervisor is entitled, and such other sums for mileage and certain expenses which are the limit of his compensation for performing the public business which inheres in his office.   No provision is found therein which authorized the supervisor to retain a percentage of the public moneys passing through his hands, as it is well settled that a public officer may not exact compensation for services which he is required to perform in the discharge of his duties, and for which no compensation is provided.   (*Reynolds* v. *City of Mount Vernon,* 26 App. Div. 581.)   As to this particular supervisor, it appears that in 1894 the amount of the percentages retained by him was $5,047.35.   The retention of this sum is sought to be justified by resolution of the board of supervisors authorizing the building of roads and bonding the town for that purpose, and authorizing a supervisor to retain a percentage of one per cent for receiving and paying out the money

for such improvement.   This court has already held that such reso-
lution, to the extent to which it authorized the payment of this per-
centage, is void.  (*Ghiglione* v. *Marsh*, 23 App. Div. 61.)   It also
appears that this supervisor retained the further sum of $1,940.34
for percentage in the year 1896 ; and that George W. Smith, super-
visor of the town for that year, and who was made a party to
this proceeding, retained the sum of $1,173.02.   These percent-
ages were all unlawfully retained ; and while it is true, as we
have seen, that the provisions of the act under which this pro-
ceeding is instituted authorize no affirmative relief as against
these persons, yet the investigation of the financial affairs of the
town, authorized by the statute, has the effect of exposing the illegal
appropriation of the public moneys, and thereby is made clear to
the public authorities, charged with a duty in connection with such
matters, the necessity of invoking such remedy as the law has
placed within their power for the purpose of recovering the same
from the individuals who have thus illegally appropriated the pub-
lic moneys.

It is not appropriate to the present discussion that we should
refer to each item or individual, where it is made to appear that
illegal charges have been audited, allowed and paid by former
boards.  It is sufficient now to say in respect of such illegal charges
that while the present statute is inadequate to correct such illegal
action, and to restore the moneys thus appropriated, yet in every
such case, where the Statute of Limitations has not run against the
claim, a right of action exists to recover the moneys thus illegally
appropriated and paid.   In this regard we do not deem it necessary
to call more particular attention to the matter, except in the case of
Brill, the town clerk for the years that he was in office.   It appears
from the report of the experts that Brill charged, and was allowed
and paid, at the rate of two dollars per day for his services as custo-
dian of the town records ; and this charge was as well for Sundays
and holidays as for other days of the week.   We agree with the
learned experts that this item constituted an illegal charge, and was
beyond the authority of the board to allow.   A public officer is
entitled to no compensation for the performance of a public service,
unless the law attaches it to his office.  (*Fitzsimmons* v. *City of
Brooklyn*, 102 N. Y. 536.)   A town clerk is entitled to certain fees

for filing papers required to be filed with him, for registering the same, for searching for papers; and for certified copies of instruments or records required to be kept by him, he is entitled to the same fees as are allowed by law to county clerks.  (McCall's Clerk's Asst. [5th ed.] 541.)  In addition to these fees he is, by section 178 of the Town Law (Chap. 569 of the Laws of 1890, as amd. by chap. 297, Laws of 1893), entitled to two dollars for each day actually and necessarily devoted to the service of the town in the duties of his office, when no fee is allowed by law for such service.  It is quite evident that this act does not contemplate an allowance of two dollars per day as custodian of the papers required to be filed with him. In this respect he occupies the same relation to the papers required to be filed and kept in his office, as does a county clerk to the papers and records required to be filed and kept with him.  It has never been claimed, so far as we are aware, that either a town or a county clerk was entitled to *per diem* compensation for the custody of the documents for the filing and custody of which he receives a fee.  It has always been assumed that his compensation was measured by the fees which he received for the service that he was required to perform.  If the town be populous and the business large, the fees would be correspondingly more, and his compensation greater; and the fee was provided for the express purpose of compensating him for the service he was required to perform.  If it were otherwise, each town clerk throughout all the towns in the State would be entitled to compensation at the rate of two dollars per day for the mere custody of the papers in his office.  A construction of the statute producing such a result we think is not permissible. . Certain duties are imposed upon the town clerk in connection with the town, and in order to authorize *per diem* compensation for attendance at his office, or as custodian of the records to be filed there, we are of opinion that an express provision of law would be necessary to attach such compensation to the office.  Indeed, the provision of the statute is: "No town officer shall be allowed any per diem compensation for his services unless expressly provided by law." (§ 166, Town Law, chap. 569, Laws 1890.)  Section 178 does not in terms attach a *per diem* compensation for the mere keeping open of his office, and we are of opinion that it was not intended to

furnish compensation for such service, but that his compensation in this regard is measured by the fees which he is entitled to receive.

So far as the town clerk is required to attend upon the town board of his town (§ 3, chap. 344, Laws of 1893), he is entitled to receive the same compensation as any other member of the town board, in addition to his other compensation allowed by law. It is quite clear that he would not be authorized to charge for more than one day for a meeting of the town board, where the duties to be performed for that day related to a particular function. But in those instances where the town board, acting through different members, have meetings, as there would be different members of each board, it would be an entirely different meeting, and for each of such meetings we are of opinion that he became entitled to charge *per diem* compensation for each board. But in those cases where the board is composed of the same individuals performing service for the town, although under different names, we think there can be but one *per diem* compensation for such service, and to the extent that the town clerk or other members of such board have charged and received compensation for separate meetings of the same persons under different names, such charge is not authorized by law, and is, therefore, illegal.

We shall not attempt in this opinion to point out each particular instance where such illegal charge has been made. It is sufficient that we now state what is the legal rule covering such a case, and the application can be easily made to those conditions which fall within it. While it is true that this statute cannot operate in restraint of illegal payments made by former boards, yet so far as the report and the order made by the learned court in respect thereto are concerned, the injunction in form against such payments does not furnish any basis of legal error. No individual is made to suffer therefrom in a legal sense, and even though the order assumes to restrain such acts, yet it is harmless in such regard, as no steps can be taken thereunder which at all affect the rights or status of the individual in respect thereto. It is not made evidence upon which to base an action for moneys received, as in order to sustain such action common-law proof would be required, and this report and order cannot be evidence for such purpose. It does, however, as we have already observed, point out to the town its financial con-

dition, and advises its officers of facts upon which may be predicated proceedings for relief, and to compel the restoration of the illegal appropriation.

We come now to consider the specific acts upon which the statute may operate, and upon which rests the legal basis for the assessment of the costs of the proceeding. So far as the bills of the justices of the peace are concerned, the experts have rejected from the bills presented and audited by the board, the following items : For orders made upon the trial at twenty-five cents each ; for arraignments at a dollar each ; for adjournments at a dollar each ; for hearings when apparently no hearing was had ; for a record of conviction ; for a retainer ; for trials when apparently no trial was had ; for printing blanks and for blanks ; for attendance at board meetings on the same day as other board meetings for which charges are made ; for *per diem* work on same days as meetings of the town board ; for sentences when the defendant was discharged ; for commitments when the defendant was not committed ; for recalls ; for proceedings to kill dogs ; for expenses to Albany as committee on legislation ; for cash for telegrams ; for committee work ; for white paper, yellow paper and criminal dockets, and for clerical proceedings.

So far as the orders are concerned, at twenty-five cents each, which seem to make up the largest item, it appears that in each instance the charge was made by the justice when an adjournment was had and when there was a final determination. The act fixing the fees of justices of the peace in civil and criminal cases is found in chapter 188 of the Laws of 1884. By its provisions are found in the first instance, in specific terms, the fees for each act which he is required to perform upon a civil or criminal proceeding. After specifying in detail these specific charges, there follows a general provision as follows : " For furnishing copies of papers in any proceeding, at the rate of five cents per folio of one hundred words ; for each order in writing or certificate required by law, twenty-five cents ; drawing an undertaking of bail, twenty-five cents ; taking an acknowledgment, twenty-five cents." It would seem from a reading of this provision that in the first instance the fees of the justice for every act which he is required to perform from the issuing of a warrant to the discharge or conviction of the offender, are made certain by specific provision. The clause above quoted seems to us to

relate to other matters and things which he may be required to do, quite independent of the trial; and so he is permitted to charge for furnishing copies of papers, for the order, for taking bail, and for acknowledgments. These may all be said to contemplate steps to be performed after the trial, except in those cases where he is required by law to make a formal order, as in proceedings to kill dogs, and perhaps others. The language is, "for each order, in writing." As we construe the section, this contemplates a written order, and does not mean a mere entry in the minutes of the justice that he has made a determination or given a direction. If we are correct in this view, it follows that there was no authority to charge as for an order of the entry of a minute of adjournment or of a discharge or a conviction. The finding of the experts and the order of the judge, so far as this item is concerned, we think to be correct.

The statute authorizes a charge of one dollar for each day's necessary attendance upon the hearing or examination of the accused. So far as this item is concerned we are of opinion that the magistrate became entitled to charge one dollar for each time that he necessarily attended; thus, at the time when the arraignment of the defendant was had, if there was a hearing, the magistrate was entitled to charge one dollar therefor. If the case was necessarily adjourned, and he again attended, he became entitled to his statutory fees for such second attendance, if necessary; and it would matter not whether evidence was taken or not, the fee is for the necessary attendance, and the magistrate is entitled to charge therefor. To the extent, therefore, that the report of the experts and the order of the court based thereon rejected items of this character, their determination in this respect may not be upheld.

It cannot be expected in a written opinion that each particular item shall be pointed out from this voluminous record wherein this rule has been violated. Nor do we determine that in those instances where the experts have reported against the charge for hearings when apparently no hearing was had, or trials when no trial was had, or examinations when no examination was had, that thereby the report is to be rejected and the order is to be reversed; or, in other words, when the service for which the charge is made was not rendered, that the finding of the experts or the order of the

court based thereon is to be set aside. On the contrary, such items were, in our opinion, properly rejected. As to those justices who refused to make explanation of the charges contained in their bills when opportunity was given them so to do, while nothing is to be inferred against them upon that account, certainly nothing is to be presumed in their favor, and, therefore, as to these items, we think the evidence taken by the experts sufficient to justify their rejection and to support the order which has been made. But wherever it appears that the magistrate did actually attend at the time when the defendant was arraigned, or upon a day adjourned, and that proceeding actually took place, the magistrate became entitled to charge therefor.

As to the item for adjournments only, a charge of twenty-five cents is authorized, and wherever such charge has been made in excess of such sum, it constitutes an illegal charge. .

So far as the items for a retainer, the printing of blanks, or for blanks and for criminal dockets are concerned, there exists no authority in law for such charges, and such items were properly rejected. A justice cannot be retained, that is, legally, and for his blanks and books the fees of his office are presumed to cover such expense, and they are a personal charge to the magistrate and not to the town.

So far as the items for attendance upon board meetings are concerned, the same rule must be held to apply as we have already asserted as applicable to the town clerk under similar circumstances.

So far as the items charged for services upon the legislative committee and expenses connected therewith are concerned, no basis in law exists therefor, and they seem to have been finally properly rejected by the board of auditors.

By section 125 of the County Law (Chap. 686, Laws of 1892), authority is conferred upon justices of the peace to take cognizance of a complaint that a dog has made an attack upon any person peaceably traveling on the highway, or his horse or team, and if upon inquiry the justice is satisfied of the truth of the complaint and that such dog is a dangerous animal, he is required to make an order directing the owner or possessor of such dog to kill him immediately. Article 9, section 1, of the ordinances of the town of Hempstead provides that it shall be unlawful for any dog or dogs to be at

SECOND DEPARTMENT, JANUARY TERM, 1899. [Vol. 36.

large upon any public highway, without a muzzle, except hunting dogs under the immediate and positive control of their owners or some other person, and the owner of any such dog or dogs who willfully permits the same to run at large is guilty of a misdemeanor. By section 2 of this article, any justice of the peace of the town, upon complaint being made to him on oath that any dog is running at large in violation of the 1st section hereinabove referred to, may issue his order to any constable, or any person of the town, directing him to kill and bury the carcass of such dog. The ordinance provides a fee to the constable for such service of two dollars for each dog so killed and buried. It is evident that a proceeding under either the statute or the ordinance is in the nature of a criminal proceeding, and for such service we see no reason why the magistrate is not entitled to the same fees as in any other criminal proceeding, so far as to authorize fees for the steps he is required to take. In some of the bills presented by the justices, charge is made for a warrant, which is improper, as no warrant is required to issue in such case. The proceeding is instituted by a complaint upon which a hearing is had, and the result of the determination is a final order. For those services the magistrate is entitled to fees, and for nothing else in connection therewith, as nothing else is required to be done so far as the operation upon the dog is concerned. The experts, however, have rejected all of the charges made by the magistrate for these proceedings, and the order of the court confirms the report. To the extent that we have indicated herein, the order in this respect is error, and the fees in those proceedings should be adjusted upon the basis herein suggested.

In the bills of the constables and deputy sheriffs, the experts reported to reject items for attending court when no jury was summoned; for taking a prisoner before a justice; for proceedings to kill dogs; for duplicate charges for notifying complainants; charges for mileage for conveying prisoners to the jail; for executing extra mittimuses.

So far as these items contain duplicate charges, it is not contended that they were not properly rejected by the experts. So far as the items for attendance upon court when no jury was summoned, at the rate of fifty cents for each attendance, are concerned, no authority exists in law for such charge. The provision of the statute is

that a constable is entitled to charge fifty cents for taking charge of
a jury during their deliberation, but there is no provision of law
authorizing a constable to make any charge for attendance upon the
court, except when he attends a court of record pursuant to a notice
for that purpose given by the sheriff, when he is entitled to charge
two dollars for each day's attendance and five cents for each mile
traveled going to and attending said court. (Chap. 692, Laws of
1866, as amd. by chap. 89, Laws of 1877; Practice in Matters
of Costs & Fees [Bradner], 342; McCall's Clerk's Asst. [5th ed.]
535.) This item was, therefore, properly rejected. So far as claim
is made that no evidence exists that a jury was not summoned upon
each case when the charge is made for attendance, it may be observed
that the bills of the constables themselves do not specify that any
jury was summoned at the time when the charge was made, nor do
the corresponding bills of the justices contain any mention or charge
for the summoning of jurors in such cases; consequently, there was
evidence from which the experts were authorized to find, and the
court to conclude, that the charge was for attendance merely and
not for taking charge of a jury.

So far as the item for taking prisoners before a justice is con-
cerned, no charge is permitted by the statute. A constable is only
authorized to charge for executing a warrant seventy-five cents, and
for the custody of the defendant during the pendency of the pro-
ceeding, when he is directed by the justice to retain the person
arrested in custody, one dollar per day. No other charge in this
regard is authorized. (Chap. 692, Laws of 1866, as amd. by chap.
89, Laws of 1877.) This charge was, therefore, properly rejected.

So far as the proceeding to kill dogs is concerned, if it be had
under section 125 of the County Law, no charge is authorized to be
made against the town, as there is no provision of law authorizing a
fee for such service under this statute. Whatever fee he may be
entitled to for such service is a county and not a town charge.
(County Law, § 230, subd. 6.) If the proceeding was had under
the ordinance of the town of Hempstead, then the constable became
entitled to charge two dollars for killing and burying each dog.
(§ 2, art. 9 of the Ordinances.) We are not able to determine
either from the report of the experts or from the evidence in the
case whether these proceedings to kill dogs were taken under the

statute or under the ordinance; nor is there anything in the bills of the officers, rendered in such proceedings, which shows under which authority these proceedings were taken. In order to constitute such items a charge against the town it became incumbent upon the officer making the claim to show that such items constituted a proper town charge; and in the absence of any proof showing such fact it became the duty of the auditors to reject the bill; and inasmuch as no proof whatever was given showing that these items were a proper charge against the town, it was within the province of the experts to find that they did not constitute a valid charge, and their report thereon, and the order of the court thereunder, were properly made.

The statute allows mileage for every mile traveled going and coming, at a given rate, when the officer is engaged upon a service which authorizes him to make the charge. The statute seeks to make compensation for actual and not constructive miles traveled, and is for the indemnity of the officer for expenses necessarily incurred in traversing the distance he is required to go. Under such authority it is easy to see that he may not charge for more miles than he has traveled, even though he have at the time in his custody more than one person. It is monstrous to assert that when the officer takes into custody more than one person for the purpose of delivering them either before the magistrate, or from the magistrate's office to the place of custody, he may charge for having traveled over the same distance for each person he so takes, when in fact he makes but one trip. Such a charge is a fraud upon its face, as it amounts to a receipt of money for miles alleged to have been traveled which have not in fact been traveled. The officer is no more authorized to charge therefor than he is authorized to make a fictitious charge for any other service which he never rendered. So far, therefore, as these bills involved charges for mileage under such circumstances, the report of the experts and the order based thereon are to be sustained.

The charge for burying the dead bodies of animals was a proper charge against the town, when done pursuant to the directions of the local board of health. (Laws of 1893, chap. 661, § 30.) The record in this case shows that animals were buried pursuant to the direction of the board of health. It is not contended but that the

service was required, and the expense of burying the animals constituted a proper charge. The basis of their rejection was that the charge therefor was excessive. We do not find in the record any support for this conclusion. As the service was rendered, and as its reasonable value constituted it a proper charge against the town, we are of opinion that it must have been made to appear by evidence that the charge itself was excessive before it could be stricken out, and of that fact there is no proof. The report and the order in this respect may not, therefore, be sustained.

So far as the items for printing bills are concerned, it is not entirely clear from what the items for printing were made up. The evidence tends to establish that in part at least they consisted of blanks and papers used by the justices in criminal proceedings. We are cited to no authority in any law which constitutes such matter a legal charge against the town. On the contrary, as we have before observed, such stationery, blanks, etc., as the justices require are to be furnished by them, and their fees are expected to pay therefor. It may be — indeed we are of opinion — that necessary printed matter for the board of public health and for certificates or leases for the oyster lands of the town to the town board would each constitute a proper charge. (Laws of 1893, chap. 661, § 30; Laws of 1871, chap. 639, as amd. by chap. 183, Laws of 1887; *Matter of Taxpayers of Plattsburgh*, 157 N. Y. 78.) As we have already seen, however, it became incumbent upon the persons making a charge against the town, to make plain that such charge was in all respects a legal one and authorized by some law, and when such bills are presented in such manner that the auditing board is not able to separate the legal from the illegal charges, it becomes their duty to refuse audit of any for such service. It is therefore, clear that so far as the printing items are concerned the experts were authorized to find that the same were an illegal charge against the town, and the order of the court rejecting such items was proper.

So far as the bill of James B. Curley is concerned, we have already sufficiently adverted to the subject-matter presented under the discussion of the case of Francis Brill, the former town clerk. So far as the costs of the proceeding have been adjudged against William W. Wilson, James M. Wheelright, Sylvanus L. Johnson,

Frederick E. Gildersleeve, Robert J. Wood and Robert T. Will-marth, the order of the learned judge may not be sustained.   These persons were not parties to this proceeding; and however irregular their bills may have been, no basis exists in law to charge costs upon persons who are not cited to appear, or made parties in the proceeding to which the costs are incidental.   (*Matter of Town of Flatlands*, MS. opinion by Mr. Justice WILLARD BARTLETT, not reported.)   Costs were properly adjudged against the other persons named in the order, as they were all parties to the proceeding and the investigation was in direct review of their acts.   The only question with which we are now concerned relates to the amount which has been awarded.   The act itself is silent as to what costs shall be taxed.   It provides: "The costs incurred in such investigation shall be taxed by the justice, and paid, upon his order, by the officers whose expenditures are investigated, if the facts in such affidavit be substantially proved, and otherwise by the freeholders making such affidavit."   It is clear to our minds that the facts warranted the court in making the order imposing costs.   The amount, therefore, which is to be imposed is the only question.   We think that the Code authorizes the costs as taxed, except the sums paid the stenographers. (Code Civ. Proc. §§ 3240, 3256.)   It has been determined that this proceeding is a special proceeding.   (*Matter of Taxpayers of Platts-burgh, supra.*)   By the provisions of section 3240, costs in a special proceeding instituted in a court of record, where the same are not specially regulated by the Code, are to be awarded in the discretion of the court at the rates allowed for similar services in an action brought in the same court.   We have already held that in the absence of a stipulation stenographers' fees could not be taxed as costs (*Matter of Engelbrecht*, 15 App. Div. 541), and we are unable to find in this act any authority therefor.   So far as the fees of the experts are concerned, they are to be treated as similar in all respects to the fees of a referee, and were, therefore, properly taxable.

We have not attempted in this discussion to point out in particular detail each item which should not have been rejected, or those items which we hold to have been properly rejected.   Their number forbids an examination, or at least discussion, as to each one. Rather have we sought to enunciate such general rules as will enable the parties hereto to determine their legal rights in respect of such

bills, and furnish a rule sufficient as a guide to enable the parties to dispose of the whole matter.

It follows that the order of the court should be modified as expressed in this opinion, and as modified affirmed.

All concurred, except WOODWARD, J., absent.

Order modified in accordance with opinion of HATCH, J., without costs of appeal to either party.