Accordingly the judgment must be reversed, with costs.

Judgment reversed.

(70 Misc. Rep. 206.)

### CITY OF GENEVA v. STATE.

(Court of Claims of New York. December, 1910.)

HEALTH (§ 16*)—QUARANTINE OF SMALLPOX PATIENTS BY CITY—LIABILITY OF STATE FOR EXPENSES.

Public Health Law (Laws 1893, c. 661) § 24, provides that local boards of health shall guard against infectious diseases by medical inspection and control and isolation of all persons arising in the municipality from infected places, and provide suitable places for treatment of such persons who cannot otherwise be provided for. Section 30 provides that all expenses incurred by any local board of health in the performance of the duties imposed upon it by law shall be a charge upon the municipality. *Held*, that there being no provision in the statute for reimbursement by the state of individuals or a locality for services or expenses incurred, even under the direction of the state board of health, an enabling act (Laws 1899, c. 719), conferring upon the Court of Claims jurisdiction to determine a claim of a city for expenditures in quarantining and treating a traveling opera-troupe suffering from smallpox, and providing that no award should be made or judgment rendered against the state unless the facts proved should make out a case against the state, created no liability of the state for the amount expended in enforcing the quarantine, but was merely a submission to the Court of Claims of the merits of the case.

[Ed. Note.—For other cases, see Health, Cent. Dig. §§ 13, 14; Dec. Dig. § 16.*]

Claim by the City of Geneva against the State. Claim dismissed.

W. S. O'Brien, Corp. Atty., for claimant.

Edward R. O'Malley, Atty. Gen., and Daniel E. Brong, Deputy Atty. Gen., for the State.

MURRAY, J. The city of Geneva is a domestic municipal corporation, organized pursuant to chapter 360 of the Laws of 1897.

About May 21, 1898, the Joshua Simpkins Theatrical Troupe, a traveling opera company, consisting of about 26 persons, traveled from the city of Ithaca to the city of Geneva in two special cars. While the company was at Ithaca, one of the troupe was found to be suffering from smallpox and was removed to a hospital. This information was communicated to the authorities of Geneva, and when the cars reached that place the members of the company attempted to parade through the streets with a band. They were driven back to the cars under the

authority of the chief of police, and a guard of men was stationed about the cars to prevent the individuals leaving them. The health officer of Geneva telegraphed these facts to the state department of health at Albany, and in reply received a telegram as follows:

"Vaccinate all exposed persons with trustworthy virus, and hold them under strict observation until it proves successful. Keep me informed. Will make personal visitation if necessary.
                    "Baxter T. Smelzer, Sec'y State Board of Health."

Shortly after this, and while the persons were being so held in the cars, Dr. Curtis, a medical officer of the state board of health, visited Geneva. He found the diagnosis to be correct, members of the troupe suffering from smallpox, and advised isolation and quarantine. A plan was adopted of removing the members of the troupe to an unused steamer and anchoring it in Seneca Lake. The boat was converted into a hospital ship, and the individuals were removed to it and cared for in it until traces of the disease disappeared. This quarantine proved effectual, and the further spread of the contagion was stopped. The city of Geneva made subsequently an application to the Legislature for relief, and it resulted in the passage of chapter 719 of the Laws of 1899, by which jurisdiction was conferred upon this court to hear and determine this controversy. In enforcing the quarantine above referred to, and in caring for the persons so isolated, the city of Geneva incurred an expense of $2,405.35, and files this claim against the state, seeking to recover this amount from the state and reimburse itself for the money so expended.

It is conceded that the circumstances of the case were somewhat unusual. The opera company was traveling about the state, spreading the germs of a communicable disease which might have produced an epidemic if the persons had not been isolated, cared for in quarantine, and the contagion checked.

By the public health law (Laws of 1893, c. 661), it was the intention of the Legislature to give supervisory control in matters respecting the general health of the state to the state board of health, and to provide for the protection of each particular locality from the introduction of contagious and communicable diseases through local boards of health.

Section 24 of the act provides:

"Every such local board of health shall guard against the introduction of contagious and infectious diseases by the exercise of proper and vigilant medical inspection and control of all persons and things arriving in the municipality from infected places, or which from any cause are liable to communicate contagion. It shall require the isolation of all persons and things infected with or exposed to such diseases, and provide suitable places for the treatment and care of such persons who can not otherwise be provided for. It shall prohibit and prevent all intercourse and communication with or use of infected premises, places and things. * * * It shall report to the state board of health, promptly, the facts relating to contagious and infectious diseases, and every case of smallpox or varioloid within the municipality."

All expenses incurred by any local board of health in the performance of the duties imposed upon it, or its members, by law shall be a charge upon the municipality, and shall be audited, levied, collected,

and paid in the same manner as the other charges of, or upon, the municipality are audited, levied, collected, and paid. Id. § 30.

Under these sections of the public health law, it was the legal duty of the local municipal board of health to report any case of smallpox within the municipality to the state board of health. It was also the duty of the municipality to guard against and prevent the introduction of any infectious disease, to enforce the isolation of all persons infected with it or exposed to it, and to provide suitable places for the quarantine and the care and treatment of such persons, and it was provided that these expenses so incurred by the local board of health should be a charge upon the municipality. The city of Geneva in this case did nothing which it was not required by law to do.

There is no provision in the statute for the reimbursement by the state of individuals or a locality for services rendered or expenses incurred, even under the direction of the state board of health, and the learned counsel for the claimant admits "that if the claimant's case rested upon the public health law alone there is no express statute upon which an award could be based." But he cites the provisions of the enabling act and claims under this act the additional sanction for the court making an award herein. I am unable to discover any difference between this enabling act and the usual enabling acts then in vogue by which it was customary to confer jurisdiction on this court to hear and determine a claim submitted. The state simply waived its sovereignty and permitted itself to be sued and the claim presented to this court. It admitted no liability, it waived no legal defense, else why did not the Legislature appropriate the amount alleged to have been expended and reimburse the claimant without submission to this court.

The act provides that jurisdiction is conferred upon the court to hear, audit, and determine the alleged claim for moneys alleged to have been advanced and expended, and to make an award and render judgment therefor against the state and in favor of said claimant; but said judgment shall not be in excess of the sum actually expended and disbursed by the city of Geneva.

"No award shall be made or judgment rendered against the state, unless the facts proved shall make out a case against the state, which would create a liability were the same established in evidence in a court of law or equity against an individual or corporation, and in case such liability shall be satisfactorily established then the court shall award judgment."

This act was simply a submission of the merits of the controversy.

In Matter of Taxpayers of Plattsburgh, 157 N. Y. 78, 86, 87, 51 N. E. 512, 515, Judge O'Brien, writing for the court, after citing the provisions of the public health law above quoted, says:

"This provision of the general law must be regarded as in the nature of an amendment or at least a part of all municipal charters. The charter of this village, it is true, contains no provision authorizing the trustees to raise money or to contract debts for the purpose of suppressing disease or preserving the public health, but the general laws of the state make it their duty to comply with the orders of the local board of health in this respect, and when that board incurs expense in the performance of its duty in guarding against the introduction into the village of contagious or infectious diseases, or in

the isolation of persons or things infected with or exposed to such disease, or in providing suitable places for the treatment and care of the sick who cannot otherwise be provided for, it becomes the duty of the municipal authorties to comply with the order whether there is any provision to that effect in the charter or not. So we think the strict view taken by the courts below with reference to the powers of the trustees in this respect is erroneous."

I am of the opinion that the facts proved do not make out a case of liability against the state. The city of Geneva did only what was its bounden duty to do in the premises. It acted as much for its own preservation as for the state's welfare. The statute makes no provision for reimbursement, and the state officials did not even promise to repay. The claim should be dismissed.

Claim dismissed.