PEOPLE ex rel. RICE v. BOARD OF SUP'RS OF ORLEANS COUNTY.

(Supreme Court, Appellate Division, Fourth Department.    November 15, 1904.)

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—NOTICES OF APPEAL.

   Town Law, § 163 (Laws 1890, p. 1234, c. 569), providing for an appeal from the determination of the board of town auditors in the allowance or rejection of claims, which requires the service of written notice of the appeal on the town clerk and the clerk of the board of supervisors, is not unconstitutional, in failing to also require a notice to be served on the claimant.

2. TOWNS—AUDIT OF CLAIMS—APPEAL—CITATION OF CLAIMANT.

   Under Town Law, § 163 (Laws 1890, p. 1234, c. 569), providing for appeals from the determination of the board of town auditors in the allowance or rejection of claims, and requiring the service of written notice of appeal on the town clerk and the clerk of the board of supervisors, the board of supervisors is not required to summon the claimant to appear personally and explain the items of his account.

3. SAME—HEARING OF APPEAL—PRACTICE.

   The board of county supervisors, on appeal from a board of town auditors allowing controverted claims, need not take up each claim separately, hear the evidence applicable to it, dispose of it, and then resummon the witnesses and consider another like claim, and so on, but may hear at the same time all the proofs pertaining in any way to any controverted and related claims.

4. SAME—COLLUSIVE CLAIMS—EVIDENCE—SUFFICIENCY.

   On certiorari to review the action of the board of supervisors of a county in rejecting relator's claim for services rendered by him, as constable, in arresting tramps and intoxicated persons, evidence *held* sufficient to justify the supervisors in exercising their discretion in the rejection of the claims on the ground of collusion between relator, a justice of the peace, and the persons arrested.

5. SAME.

   Where the general character of claims presented to a board of county supervisors for services in making arrests was suspicious, and justified the finding that the claims were fraudulent, the board was not required to sift through the claims in order to allow a few of them, but, if the claimant acted in bad faith, the total disallowance of all was proper.

6. SAME—DISCRETION OF SUPERVISORS—REVIEW BY THE COURT.

   The board of county supervisors, in passing upon the validity of claims presented to it, must be given the widest latitude; and courts will very rarely interfere with its discretion, when exercised reasonably and in good faith.

Certiorari by the people, on the relation of John G. Rice, to review the action of the board of supervisors of the county of Orleans in rejecting the claim of relator for services rendered as constable of the town of Albion, in said county. Writ dismissed.

The relator was a constable of the town of Albion. In the fall of 1903 he presented to the board of town auditors of said town an itemized account for fees and disbursements to which he claimed to be entitled. Mr. Bullard, a lawyer of good repute in the county, was retained by the town board to investigate this claim, in connection with several others, the merits of which seemed to be in doubt. The relator appeared and was examined in reference to one item of his claim, when he declined to be investigated further, and no further explanation was given as to the items comprising his claim. Contrary to the advice of Mr. Bullard, the relator's claim was allowed as presented, and others of a somewhat similar character were rejected. Pursuant to section 163 of the town law (chapter 569, p. 1234, Laws 1890), an appeal was taken to the board of supervisors from the auditing and allowance of the town board by Mr. Bullard and Mr. Burrows, who were taxpayers of the town of Albion. The claim was rejected in toto by the board of supervisors. Upon the application of the relator a writ of certiorari was issued to review the determination of the board, and a return thereto by the board of supervisors has been filed, returning the proceedings before that body, the proofs taken, and a statement of the reasons which compelled the disallowance of the claim.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Thomas A. Kirby, for relator.
. Frederic M. Thompson, for defendant.

SPRING, J. In the fall of 1903 quite a number of claims for fees in criminal proceedings against the town of Albion were presented to the board of town auditors for audit. These claims were largely for the arrest of tramps and "rounders," as intoxicated or disorderly persons; and the frequency of the arrests, the character of the offense, and the fact that a few of those arrested were repeatedly apprehended on the same charge, gave color to the suggestion that some of them were fictitious and fraudulent. Public sentiment ran high, and an investigation of the several claims followed. This investigation was first had before the board of town auditors, and afterward upon appeal by the board of supervisors. The contention of the defendant is that there was a plot on the part of some constables of the town, whereby the tramps known as "rounders" were arrested, not as vagrants, but as intoxicated persons, or for disorderly conduct, and, upon arraignment before the justice and upon a plea of guilty in each case, the prisoner was sentenced to the county jail. This scheme was co-operated in by the justices of the peace. The tramps were also privy to the enterprise, as, for a drink of whisky or a pittance, they were induced to plead guilty upon the promise that sentence was to be a brief period in the county jail. The object of laying the accusation of intoxication or disorderly conduct was that the fee allowed for the arrest and trial on this charge was about $3, while for vagrancy only 70 cents were allowed. Again, one charged with vagrancy or being a tramp may be sentenced to the Monroe county penitentiary,

which would be of no benefit to the sheriff of the county, who boarded the prisoners in his custody at the expense of the county. On the other hand, a person arrested for intoxication could be sentenced to the county jail, and that seems to have been the course quite generally adopted. These rounders ordinarily gave fictitious names when before the magistrates. When the term of service in jail of one of them expired, he renewed this scheme in some other locality. They followed a sort of a circuit in their wanderings, and a few towns were especially pestered with their presence. They obtained quite an acquaintanceship with certain peace officers and with the interiors of the county jails along the route of their peregrinations. A large volume of testimony was taken on the hearing by the board of supervisors bearing upon this scheme. Three of the tramps were sworn, and in their narration the plan was exploited and elucidated. If their story is to be credited—and there is considerable confirmatory testimony in the record—the board had evidence sufficient to support the charge of the existence of the scheme.

The relator raises various objections to the rejection of his claim. Section 163 of the town law (Laws 1890, p. 1234, c. 569), in providing for an appeal from the determination of the board of town auditors, requires the service of a written notice of appeal on the town clerk and the clerk of the board of supervisors, and this course was strictly followed. No notice of appeal is required by the statute to be served on the claimant, and none in fact was served. The relator claims that the statute is unconstitutional, in thus failing to require a notice of appeal to be served on the one primarily interested in the claim. If no notice at all had been prescribed, perhaps the contention of the relator would be tenable. The whole proceeding for the presentation and allowance of claims is defined in the town law. The Legislature, in prescribing for the review of the audit and allowance of a claim, had the right to fix the manner and the time in which that appeal should be taken. If the manner of service is reasonable and calculated to protect the rights of the parties, it is all sufficient. In the present case the service of the notice of appeal upon the town clerk, where the audited claims are deposited, and where anything pertaining to them would be apt to be kept, ought to be ample protection to every one interested. If the Legislature had prescribed a substituted service by mail, or by leaving at the house or by posting on the barn door of the claimant, that would have been sufficient. Instead of that mode of service, the one prescribed was adopted, because the Legislature evidently deemed that the most useful. The provision has been in force for many years, and its sufficiency does not seem to have been assailed.

The relator did not appear before the board of supervisors. He claims that he did not know any appeal was taken from the allowance of his claim until he learned of its rejection by the board of supervisors; that at the time of its session he was recovering from a long illness, and was unable to attend the meetings of the board. The appeal was regularly taken, and the board of supervisors was

not required to summon the claimant to appear personally and explain the items of his account. People ex rel. Caldwell v. Board, 45 App. Div. 42–47, 60 N. Y. Supp. 1122. The publicity given to the investigation, the character of the charges made, and the prominence of the claimant—for he had been sheriff of the county—would certainly warrant the inference that he knew of the appeal. The fact that he did not explain his claim when it was up for investigation by the town board, coupled with the fact that he did not appear upon the hearing of the appeal either by counsel or personally, probably led the supervisors to believe that he did not care to enter into any personal explanation of the items composing it.

It is also urged that the action of the board of supervisors in taking all the proofs pertaining in any way to any of the controverted claims, and considering it all upon each claim, was improper. It does not appear that the course criticised was the one adopted. There were a large number of claims of like character, and they were so interwoven or so dependent upon similar facts that the board elected to hear all the proofs which shed any light upon any of them. They did not take up each claim separately, hear the evidence applicable to it, dispose of it, and then resummon the witnesses, consider another like claim, pass upon it, and so on through the entire list. They were not called upon to proceed in that formal way. They were seeking to ascertain whether these claims were fictitious or genuine. They were not conducting an examination with the form and precision of a trial in court. The board was not held down to any technical rules in the investigation of these claims. People ex rel. Cochran v. Board, 74 Hun, 83, 26 N. Y. Supp. 122, where the court say at page 86, 74 Hun, and page 124, 26 N. Y. Supp.:

"It is the habit of such bodies to seek information from any quarter where it is obtainable, and we presume the practice is legitimate. They must acquire knowledge to enable them to act with wisdom in subservience to established rules. They may act upon their own knowledge acquired by observation."

The writ required the defendant to return the "proceedings, decisions, and actions in the premises, with the dates thereof, and all and singular the evidence, determinations, records, claims, bills, and papers before you, or which were submitted to you concerning the said matter, and all the resolutions, protests, affidavits, and papers offered to or filed with you, as such board of supervisors, in relation thereto, with the rulings and decisions of said board or its chairman, and all actions in relation thereto by said board." In response to this demand the defendant returned all the proceedings, a greater part of which had but little to do with this particular claim. The defendant, however, sets forth the reasons which influenced the disallowance of the claim, with the information and the facts upon which its decision was founded. The return further shows that the members of the board were convinced that the services represented by the rejected claims were not rendered in good faith "or for the purpose of protecting the community, but for the private gain of said officials so rendering said services." Fur-

ther, "that, while some of the said claims wholly rejected may contain items for services which claimants may be able to establish were rendered in good faith, they were so mixed with those of the character above indicated that this board was unable to separate them, and in all such instances rejected the entire claim, as the board was advised by counsel it had the right to do."

A justice of the peace named Phipps, who resided in the town of Albion, presented a large claim for fees in criminal proceedings for the arrest and trial of intoxicated or disorderly persons. The record shows that these were mainly tramps, many of them rounders, and the specific charge should have been vagrancy. It also appears that in the great majority of cases the tramps were arrested in the village of Albion, where there is a police justice possessing primarily exclusive jurisdiction. Phipps was not a magistrate of the village, but it was a common occurrence for the peace officers to bring these tramps before him. He kept no docket, the trials were had wherever Phipps, who was a house painter by trade, happened to be, and there was an utter absence of any formality or regularity in the proceedings in Phipps' perambulatory court. It is a fair inference that the arraignments of these prisoners before Justice Phipps were not to subserve the ends of justice or keep the peace, but were for the purpose of swelling the charges, and in furtherance of the plot already referred to. It is quite obvious that the relator was impressed with the serious character of the charges, particularly where Justice Phipps was involved. In his affidavit in answer to the return of the defendant, he states that while he was convalescing he learned of the disallowance of his claim and communicated by telephone with the supervisor of Albion, requesting "that said board eliminate from said claim the items of cases tried before George W. Phipps, and allow petitioner balance of his said bill." Of his claim of $126.98, the sum of $70.20 was for fees in the trials before Phipps.

The two circumstances largely controlling the action of the defendant in the total rejection of the claim of the relator were that the services charged for were in the main not rendered in good faith, and that, if some of them were legal and proper, they were commingled with others which were vicious, so that the board was unable to separate them. A few general observations may not be amiss. The relator had declined to be examined before the town board, or at least did not submit to an examination by Mr. Bullard. The board of supervisors might well assume that the relator was cognizant an appeal had been taken to the board, and his nonappearance when the subject-matter of this and kindred claims was awakening public discussion and interest indicated he did not desire to pass through the ordeal of an investigation. He knew apparently while the board was in session that his claim had been disallowed, for he asked that the board allow the same, with the fees in the cases before Justice Phipps eliminated. He did not, however, request that he be heard concerning this minor portion of his claim, or offer any explanation to establish its genuineness. An honest man, whose character has been unjustly impugned by

the decision of a tribunal authorized to make the determination, the effect of which is to bring condemnation, is swift to appear before that tribunal and urge the vindication to which he is entitled. The relator, on the other hand, suggested the expulsion of that part of his account which seems to have been especially vulnerable to the charge that it was fictitious and fraudulent, and requested the allowance of the balance. We are not asserting that the relator's claim was false or made up, but only indicate that there were facts and inferences which, unexplained, authorized the board to reach that determination.

When we come to analyze the items comprising the relator's claim, there is further support of the determination of the defendant. There is nothing in any of the items to show where the arrest was made or the offense committed, or whether upon the complaint of any person, or upon the constable's own motion. The police justice of the village of Albion has exclusive jurisdiction of criminal matters within the limits of the village. Section 1, tit. 6, c. 28, p. 25, Laws 1888; chapter 646, p. 1404, Laws 1900. Exclusive jurisdiction is especially given to the police justice in cases of tramps and vagrants (section 1, above referred to), and the act requires that a person arrested in said village for a violation of its ordinances "and every tramp and vagrant arrested in said village shall be immediately taken before the said police justice" (section 2, tit. 6, c. 28, p. 26, Laws 1888, supra). The village of Albion is partly in the town of Gaines and partly in the town of Albion. If the fees of the relator were chargeable to the town for arrests made in the village of Albion, the board was entitled to know in which town the arrest was made. People ex rel. Andrus v. Town Auditors, 16 Misc. Rep. 92, 37 N. Y. Supp. 633. It is hardly within the range of probability that the large number of persons who were arraigned in Justice Phipps' court committed the offenses charged within the rural part of the town in which he resided.

In every item of the relator's claim there appears a charge of $1 for "attending examination," or "custody of prisoner in court." Chapter 89, p. 93, Laws 1877, in fixing the fees of a constable in a criminal case, provides "for keeping a prisoner after being brought before the justice and, by his direction in custody, one dollar per day." Matter of the Town of Hempstead, 36 App. Div. 321, 335, 55 N. Y. Supp. 345. There is nothing in the relator's claim which shows that in any instance was the prisoner retained in the custody of the officer by the direction of the justice, and there was no proof of that kind. On the other hand, the return of the defendant shows directly to the contrary, and the answering affidavits of the relator do not contradict this statement in the return.

The relator has also charged in each item 75 cents for arrest of the defendant. He is entitled "for serving a warrant seventy-five cents." Chapter 89, p. 93, Laws 1877. It does not appear that he served any warrant in any of these cases. He may have been entitled to compensation for making the arrest, and the sum charged may have been reasonable, but he was not entitled to the specific charge. We have referred to these items not for the purpose particularly of es-

tablishing the illegality of any part of the account of the relator, but to show that there were facts and circumstances justifying the rejection of this claim by the board in the exercise of its discretion. These items, on their face, were unsatisfactory. They were not supported by any explanatory data, and their uncertainty was not cleared up by the relator, and the main items were included in this category. The board, in view of all the suspicious circumstances surrounding the claim, was not required to sift out these items in an effort to hold a few uncondemned. As was said in Matter of Town of Hempstead, 36 App. Div. 321, 55 N. Y. Supp. 345, at page 337, 36 App. Div., and page 357, 55 N. Y. Supp.:

"As we have already seen, however, it became incumbent upon the persons making a charge against the town to make plain that such charge was in all respects a legal one and authorized by some law, and, when such bills are presented in such manner that the auditing board is not able to separate the legal from the illegal charges, it becomes their duty to refuse audit of any for such service."

If the relator acted in bad faith, as the board, in the light of all the proofs and circumstances, concluded, the total disallowance of the claim was entirely proper. People ex rel. Cochran v. Board, 74 Hun, 83, 26 N. Y. Supp. 122; Rockefeller v. Taylor, 69 App. Div. 176, 74 N. Y. Supp. 812.

The board of supervisors, in passing upon the validity of the claims presented to it, must be given the widest latitude. The members act largely from their own knowledge and experience in deciding upon the merits of an account. In People v. Board, 74 Hun, 83, 26 N. Y. Supp. 122, the court say at page 86, 74 Hun, and page 124, 26 N. Y. Supp.:

"It is the habit of such bodies to seek information from any quarter where it is obtainable, and we presume the practice is legitimate. They must acquire knowledge to enable them to act with wisdom in subservience to established rules. They may act upon their own knowledge acquired by observation."

Courts very rarely interfere with the discretion of the board in matters of this kind. Within its sphere the board is a law unto itself, if its members act in good faith, and its determinations are fair and reasonable. The writ of certiorari should be dismissed with costs.

Writ dismissed, with $50 costs and disbursements. All concur.