In the Matter of the Application for the Investigation of the Expenditures of the Village of Monticello under Section 4 of the General Municipal Law.

Supreme Court, Sullivan Special Term, July 25, 1924.

Municipal corporations — application under General Municipal Law, § 4, for investigation of expenditures of village — statute requires moving affidavit signed by twenty-five freeholders — affidavit signed by thirty freeholders sufficient though action by trustees of village is pending against two signers for violation of village ordinance — village moneys expended in violation of Village Law and without authority of proposition adopted by vote of people — village president and trustees interested in village contracts in violation of statute — expert accountant should be appointed to make investigation pursuant to General Municipal Law, § 4.

Under section 4 of the General Municipal Law providing for the appointment of experts to investigate the expenditures of villages upon the application of twenty-five freeholders an affidavit signed by thirty freeholders is sufficient, even though an action is pending by trustees of the village against two signers of the affidavit for a violation of a village ordinance.

An expert accountant should be appointed to investigate the expenditures of a village where it appears that moneys are being expended in violation of the Village Law and without authority of a proposition adopted by vote of the people and that the village president and trustees of the village have been interested in village contracts contrary to statute.

Proceeding pursuant to section 4 of the General Municipal Law.

*John D. Lyons*, for the petitioners.

*J. H. Brady* (*William D. Cunningham*, of counsel), for the trustees and officers of the village of Monticello.

Nichols, J. This is a proceeding under the provisions of section 4 of the General Municipal Law which provides in part as follows:

" Sec. 4. Investigation of expenditures of towns and villages. If twenty-five freeholders in any town or village shall present to a justice of the supreme court of the judicial district in which such town or village is situated, an affidavit, stating that they are freeholders and have paid taxes on real property within such town or village within one year, that they have reason to believe that the moneys

of such town or village are being unlawfully or corruptly expended, and the grounds of their belief, such justice, upon ten days notice to the supervisor, and the officers of the town disbursing the funds to which such moneys belong, or the trustees and treasurer of the village, shall make a summary investigation into the financial affairs of such town or village, and the accounts of such officers, and, in his discretion, may appoint experts to make such investigation, and may cause the result thereof to be published in such manner as he may deem proper."

The application is signed by thirty freeholders of the village of Monticello, Sullivan county who paid taxes on real property in said village within one year. Monticello is a village of the third class.

Objection is made to an investigation, through experts appointed by me, on the ground that Elwood Geraghty and Henry Washington, two of the signers of the moving affidavit, are defendants in an action brought by the board of trustees of said village to recover a penalty against said Geraghty and Washington for violation of a village ordinance: and the reply affidavits allege statements alleged to have been made by Geraghty that this proceeding was instituted by Geraghty to compel the trustees to discontinue the action against Geraghty for a violation of said ordinance. The answering affidavits also allege that some of Geraghty's relatives and employees are among the signers of the moving affidavit; and that various other signers to the moving affidavit have been actuated by other motives than a desire to accomplish the results asked for in the moving affidavit. However, no overt acts or statements are shown by any one except Geraghty. Inasmuch as thirty freeholders and taxpayers have signed the moving affidavit, which makes them virtually plaintiffs in the proceeding, and creates a liability for the costs and expenses of the proceeding in the event that the institution of the same is not justified, it seems to me that so far as the number and rights of these freeholders are concerned, they have complied with the statutory requirements no matter whether Geraghty be counted or not. I, therefore, hold and decide that the moving affidavit and notice are in compliance with the law, as are also the legal qualifications of the signers thereof; and that the number of signers including Geraghty is five in excess of the number required by the section.

This is a remedial statute, passed to prevent waste of public moneys, and must be construed liberally to effectuate such intent. *Matter of Town of Eastchester,* 53 Hun, 181. " The statute is remedial, evidently seeking two ends: *First,* to prevent a present or future illegal appropriation of the public moneys; and, *second,* to determine

Supreme Court, July, 1924. [Vol. 123

the financial condition of the town, and provide by report and determination what are proper and what improper charges which may have been allowed by former town boards. In this way present illegal acts may be restrained, and future illegal acts in the appropriation of public moneys may be prevented, by having clearly pointed out what are and what are not proper charges." *Matter of Town of Hempstead*, 36 App. Div. 321; affd., 160 N. Y. 685.

In the moving affidavit there are no charges that the trustees of the village have acted corruptly, the sole charges being that many of the acts have been in violation of the provisions of the Village Law and some of them beyond the powers conferred by the Village Law without the authority of a proposition adopted by a vote of the people.

The assessed valuation of the property in the village for the year 1924 is $1,083,990. The moving affidavit charges that the officers have levied and assessed, raising by tax against said property, a sum in excess of three-fourths of one per cent of such valuation for highway purposes, and a further sum in excess of three-fourths of one per cent for the general fund of the village; and by other unlawful levies of which I shall hereafter treat. The answering affidavit of H. Lynden Hatch, who is president of the village, admits in the 16th and 17th folios thereof that the board of trustees levied and assessed and are raising against the property in said village the sum of $368 in excess of three-fourths of one per cent of the valuation of said village for highway purposes and the sum of $368 in excess of three-fourths of one per cent for the general fund of said village. In the admission he says that said excess was raised through mistake and that there is not and never has been any intention on the part of deponent or his colleagues to disburse any part of such excess whatsoever.

The moving affidavit further alleges that a village clerk has been employed and is to receive a sum of money in excess of $2,500 as salary without the approval or consent of the taxpayers of said village. In the answering affidavit, President Hatch says: " That George N. Hembtd is the clerk of the village of Monticello and performs the duties of village clerk and superintendent of public works. That the salary of said clerk and superintendent is $3,000 and the board in its discretion has provided that $2,000 of such salary shall be paid from the general fund and $1,000 from the water fund of said village. That his salary was fixed in the discretion of the board of trustees under the express authority of section 86 of the Village Law."

There is no such officer in a village as superintendent of public works, and, if there was, section 42 of the Village Law provides:

" * * * A person shall not hold two village offices at the same time, except the offices of collector and police constable or water and light commissioner; and except that village trustees may also be water commissioners." So that the only office that Hembdt holds is that of village clerk.

Section 101 of the Village Law provides:

" Village funds. Village funds are classified as follows:

" * * * 2. The water fund, composed of all moneys received from taxation or otherwise * * *

" 8. The general fund, composed of all moneys received from taxation or otherwise * * *."

And subdivision 9 of said section, after providing for a special fund, provides as follows: " Expenditures for a purpose specified in either subdivision must be made from the fund therein described * * *."

" This provision is mandatory and cannot be rightfully disregarded." Opinion Attorney-General (1909), 903.

Section 86 of the Village Law provides in part as follows: " The board of trustees may fix the compensation and further declare the powers and duties of all other village officers or boards and may require any officer or board of the village to furnish," etc.

The trustees had the power to fix Hembdt's salary at $3,000 per year if they saw fit, the only limitation being the amount they could raise by taxation for the general fund. They had no right, however, to pay any portion of that salary from the water fund.

Section 101-a of the Village Law provides as follows:

"Application of surplus moneys of a department. If there shall be outstanding no obligations of the village on account of a particular department and if after the payment of the current expenses of such department there shall remain a surplus in the fund of that department such surplus may be applied to the payment of any existing obligation of the village or transferred to the general fund."

And section 101-b makes a similar provision where there are no bonds or obligations against the fund. So that in the final analysis the salary of village clerk must be paid from the general fund raised by taxation and augmented possibly by transfers from other funds.

The moving affidavit alleges that the trustees of the village have levied and assessed and propose to expend without a proposition therefor or the consent of the taxpayers, in addition to the $368 excess in the general fund and the $368 excess in the street fund, the following sums: Fireman's hall, $1,200; sewer maintenance, $1,500; fire equipment fund, $500; fire fund, $300; light fund, $3,500.

The fact of raising of these funds is admitted by President Hatch.

He does not claim that these sums were raised in pursuance of a proposition submitted; he says as to the items, $500 for fire equipment fund, $1,200 for the fireman's hall and $300 for the fire fund, further including the sum of $1,500 for sewer maintenance (evidently by mistake) that the raising of this fund is authorized by the Village Law of the state of New York; that there is no separate fire board in said village and that under subdivision 19 of section 89 of the Village Law the board of trustees perform the duties of a board of fire commissioners; and that under section 200 of the Village Law the board has the care, etc., of the property belonging to the fire department and may purchase apparatus necessary to prevent and extinguish fires and keep same in good condition and may erect and maintain suitable buildings for the fire department; and that under section 101 of the Village Law a special fund may be created for a purpose not otherwise specified in the section.

These expenditures are limited and subject to the provisions of section 110 of the Village Law hereinafter specified.

President Hatch, further speaking of the $1,200 for the maintenance of the fireman's hall and $300 for a fire fund, says that same were first created in 1921 when Mr. LaTourette, one of the signers of the moving affidavit, was president of the village. And that the sum of $500 as a fire equipment fund was created in 1922, and details the circumstances which he claims justified the creation of these funds. These funds were subject to the provisions of section 110 of the Village Law, and if the circumstances were such as demanded the raising and expenditure of these moneys, it would seem to me to have been the part of wisdom to have submitted a proposition therefor, as the expenditure for any purpose of a sum in excess of the amount permitted by section 101 of the Village Law is illegal.

As to the sum of $1,500 for sewer maintenance, Mr. Hatch further claims that this was also authorized by the Village Law; that having constructed sewers, it was the duty of the board to maintain the same to avoid an epidemic. There is no claim that any epidemic arose; and as to that sum of $1,500 the trustees were bound by the provision of section 110 as hereinafter specified, unless a proposition was submitted and the expenditure authorized by vote, or unless an epidemic actually arose and money was expended by the board of health in combatting such epidemic pursuant to the provisions of the Public Health Law.

As to the expenditure of $3,500 as a light fund, President Hatch claims that this amount is expressly authorized by section 240 of the Village Law and section 101, subdivision 3, thereof. This expenditure depends for its validity upon the fact, *first*, whether

there is a contract for lighting the streets; and, *second*, as to the amount thereof. Subdivision 2 of section 110 of the Village Law provides for the amount which may be raised to pay indebtedness; the total amount of the indebtedness of the village lawfully contracted which will become due and payable during the current fiscal year, including any amounts due and to become due during such year, upon contracts entered into as provided by section 240 of the Village Law for lighting the streets, public grounds and public buildings. Section 240, " contracts for light," provides that the expenses for each fiscal year shall not exceed five mills. The amount set up, $3,500, is not in excess of five mills, which rate would raise a little in excess of $5,000. However, the trustees, without a proposition voted, have no power to raise a greater sum than the contract rate, if there was a contract, which I assume there was; so that the amount that could be raised under the provisions of said section 110, subdivision 2, would be the subject of proof on these two propositions.

The moving affidavit further alleges that the president of the village, H. Lynden Hatch, is interested in the business carried on in said village under the name of L. C. Hatch & Sons; and that said firm furnished to the village merchandise for which payment was made to G. L. Hatch in the year 1922 of the sum of $241.68, and in 1923 the sum of $461.01; and that at the time of such payments the said H. L. Hatch and G. L. Hatch were both interested in the business and in the claims and that at the time said H. Lynden Hatch was one of the trustees of the village. The moving affidavit further alleges that in 1921 and 1922, one Samuel S. McLaughlin was a trustee of said village and during the year 1923 was president thereof; that he is either a member of said firm of McLaughlin Brothers or doing business under that name as an insurance broker; and that during said three years, village funds to the amount of nearly $700 were paid to the said firm of McLaughlin Brothers in which said Samuel S. McLaughlin was directly interested. Neither of these allegations are denied in the answering affidavits.

Section 332 of the Village Law provides as follows:

" Sec. 332. Officer not to be interested in contracts. An officer shall not be directly or indirectly interested in a contract which he or a board of which he is a member is authorized to make on behalf of the village; nor in furnishing work or materials;   *   *   * "

Section 333 of the Village Law provides as follows:

" Sec. 333. Liability on unlawful contracts; failure to prosecute. An officer or person who assumes to create a liability or appropriate money or property of the village without authority of law, or assents

thereto, is personally liable for such debt, or to the village for such money or property. Each member of a village board present at a meeting thereof when such unlawful action is taken is deemed to have assented thereto, unless he expressly dissents and requests such dissent to be entered upon the minutes of the meeting. A village is not liable upon a contract made by an officer or a board in the name or on behalf of the village, unless it is authorized by law. If any person shall have heretofore appropriated or shall hereafter appropriate money or property of the village, contrary to law, and the facts in relation thereto are known to the board of trustees, and, after this section as amended takes effect, such board fail for thirty days to bring an action against such person to recover such money or property, each member of the board having such knowledge shall be guilty of a misdemeanor and liable to removal from office unless within such period of thirty days he shall file with the village clerk a written request, signed by him, requesting the bringing of such action or shall cause to be entered upon the minutes of a meeting of the board a motion made by him for the bringing of such action, or his vote in favor of such a motion."

The interest of these trustees in these sales was clearly illegal.

Section 110 of the Village Law, so far as it pertains to this inquiry, provides as follows:

" Sec. 110. Annual tax levy. Upon the expiration of such fifteen days, the board of trustees shall levy the tax for the current fiscal year, which must include the following items:

" 1. Such sums as shall have been authorized by the last preceding annual election, or by a special election for which a special tax warrant has not been issued.

" 2. The total amount of the indebtedness of the village lawfully contracted, which will become due and payable during the current fiscal year, including any amounts due or to become due, during such year, upon contracts entered into as provided in sections two hundred twenty and two hundred forty of this act, for supplying water for village purposes and for lighting the streets, public grounds and public buildings.

" 3. Such sum as the board deems necessary in addition to the poll tax to meet the expenditures from the street fund for the current fiscal year, not exceeding three-quarters of one per centum of the total valuation of the property assessed upon the annual assessment-roll of the last preceding year.

" 4. Such additional sums as shall be deemed necessary to meet all other expenditures of the village for the current fiscal year, not exceeding three-quarters of one per centum of such total valuation."

Some claim is made in the moving affidavit that H. Lynden Hatch, the village president, was not qualified to serve as village trustee for the years 1922 and 1923, he having been elected trustee for those years, on the ground that he was not the owner of property assessed to him on the last preceding assessment roll in said village. Mr. Hatch in his answering affidavit says that he was the owner of real estate situate in said village which was assessed on the assessment roll to another by mistake. This fact qualified Mr. Hatch. *People ex rel. De John* v. *Lytle*, 116 Misc. Rep. 1.

I have nothing to say about the amount of salary paid to Hembdt by the village trustees, except that the total amount that they could raise without a proposition amounted to a trifle more than $7,500; and that the trustees are limited to this amount for general purposes which would include the salary of the clerk, unless this item and other items were submitted as propositions and adopted at a regular or special election.

I overlooked the charge made in the moving affidavits relative to the payments made to Trustee Cohen in 1923 of $21.23 and the further sum of $161.48 to William Cohen which the moving affidavit charges was for merchandise in reality furnished by Trustee Isadore Cohen, and in which he was directly interested. Whatever I have heretofore said on the subject of payments made to Trustee Hatch, and former Trustee McLaughlin, also applies to the payments made to Trustee Cohen.

The moving affidavit charges the employment of five policemen for the village and an intention to expend therefor a sum of money in excess of their legal authority; and that the trustees are maintaining a horse for one of said policemen without any legal authority. The answering affidavits claim that the board is authorized to appoint such policemen as are needed and to fix their compensation under section 188-a of the Village Law, and state various reasons for this number of policemen. By section 188 of the Village Law the board has power to appoint and fix the terms of one or more village policemen; and by section 190 of said law they have the right to determine that such policemen be paid a salary and fix the same. This expense is subject, however, to the provisions of section 110 where a proposition has not been adopted for a specific amount of money for that purpose. Section 188-a, set out in the respondent's affidavit as a basis for raising those moneys, does not apply to a village of the third class of which Monticello is one.

The respondent in his brief says that subdivision 1 of section 110 is not exclusive; and that subdivision 4 contains the following authority: "4. Such additional sums as shall be deemed necessary to meet all other expenditures of the village for the

current fiscal year * * *." The respondents' attorney, in quoting, omits the balance of said subdivision, which reads as follows: " * * * not exceeding three-quarters of one per centum of such total valuation."

While I understand the difficulties which beset trustees of a village in carrying on its municipal affairs, yet the legislature has limited the purposes for which they may expend money, and, where such expenditures are authorized, the amount thereof without a proposition adopted by a majority of the people entitled to vote thereon; and no matter how high the characters of the trustees are, and how innocent of any intentional wrongdoing they may be, still the raising of money for any authorized purpose in excess of statutory limits without the adoption of a proposition therefor, is illegal. And, of course, it is the duty of the justice before whom the proceeding is pending to prohibit such acts.

I, therefore, hold that moneys of the village are being unlawfully expended and will appoint an expert accountant to make an investigation pursuant to the provisions of section 4 of the General Municipal Law. And I limit the investigation of the expenditures of said village and the financial affairs thereof, and the acts of its officers, to a period of five years preceding July 12, 1924. On the coming in of such report of such expert, I shall make such provision relative to the publishing thereof as shall seem proper under the circumstances.

Ordered accordingly.